HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ENVITECH, LLC, a Washington Limited Liability Company,

Plaintiff,

v.

EVEREST INDEMNITY INSURANCE COMPANY, a foreign insurer; THE HARTFORD CASUALTY INSURANCE COMPANY, a foreign insurer,

Defendant.

CASE NO. C17-6053RBL

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendant Everest Indemnity Insurance Company's Motion for Partial Summary Judgment on Envitech's Declaratory Judgment, Breach of Contract, and IFCA Claims against it. [Dkt. #19].

This case involves an insurance coverage dispute between Envitech and Everest. Envitech is an environmental engineering consulting firm. Envitech purchased a liability insurance policy[1] from Everest, which was in effect between April 9, 2013, and April 9, 2014.

---

[1] Each of the Everest policies includes three coverages: Professional Liability, CGL, and Contractor Pollution Liability. The policies did not change year to year.

Envitech renewed the policy each of the next four years: the 2014 Policy, the 2015 Policy, the 2016 Policy, and the 2017 Policy. The 2017 Policy expired on April 9, 2018.

In 2017, a third-party claimant, K&S Motels, LLC, sued Plaintiff Envitech, claiming it had negligently performed an environmental site assessment some ten years earlier. Envitech tendered its defense in the underlying state court action to its insurer, Everest. Everest agreed to defend Envitech, subject to a full reservation of rights under the liability policies. Envitech sued Everest in this Court, asserting two contractual claims—declaratory relief and breach of contract—and three extra-contractual claims: common law bad faith; the Washington Consumer Protection Act and the Insurance Fair Conduct Act.

In the underlying lawsuit, K&S claims that it sought to purchase real property in Tacoma, and its lender, Unibank, required an environmental site assessment. Unibank hired Envitech to perform a Phase I Environmental Site Assessment. Envitech completed its work and summarized its findings in Assessment dated August 29, 2007. Envitech concluded that the Property did not suffer from hazardous environmental conditions, and opined that no further investigation was required. K&S claims it purchased the Property for $1.185 million, based upon the professional opinions expressed in Envitech's Assessment.

Nine years later, K&S received an offer to purchase the Property for $1.2 million. K&S claims the prospective purchaser performed its own site assessment, during which it discovered petroleum products in the soil and groundwater that exceeded applicable cleanup standards. K&S claims the prospective purchaser terminated its offer because of the contamination.

K&S sued Envitech for negligent misrepresentation and professional negligence. K&S alleges that Envitech's Assessment failed to comply with applicable industry standards, and that

the Assessment contained materially false representations, which Envitech failed to correct before K&S attempted to sell the Property in 2016.

In *this* case, Envitech asserts two contractual claims against Everest—declaratory relief and for breach of contract—and three-extra-contractual claims for allegedly mishandling Envitech's insurance claim: bad faith, CPA and IFCA. Everest asserted a Declaratory Judgment counterclaim, seeking a determination that it had duty to defend or indemnify Envitech in the underlying action.

Washington courts apply a two-step process to determine whether a liability policy provides coverage. First, the insured must prove that the loss falls within the policy's insuring agreement. And, if so, then the burden shifts to the insurer to prove that a policy exclusion applies. *Overton v. Consolidated Ins. Co.*, 145 Wn.2d 417, 431, 38 P.3d 322 (2002). For the reasons discussed below, the claims asserted by K&S against Envitech do not fall within the Everest Policies' insuring agreements and are also excluded from coverage.

1. **The Everest Policies do not provide Professional Liability coverage for K&S's claims against Envitech**.

The Everest Policies each contain a Professional Liability coverage part, which contains the following insuring agreement:

> a. We will pay those sums that the insured becomes legally obligated to pay as compensatory damages because of any "claim" that results from a "professional services incident" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages because of any "claim" that results from a "professional services incident" to which this insurance does not apply. . . .
>
> * * *
>
> b. This insurance applies to a "claim" that results from a

"professional services incident" only if:

* * *

   (3) a "claim" for damages because of the "professional services incident" is first made against any insured, in accordance with Paragraph c. below, during the policy period or any Extended Reporting Period we provide under Section V – Extended Reporting Periods.

 c. A "claim" by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

   (1) When the notice of such "claim" is received and recorded by any insured or by us; or

   (2) When we make a settlement in accordance with Paragraph 1.a. above.

 All "claims" for damages that result from a "professional services incident" and in injury to the same person or organization, including damages claimed for care, loss of services or death resulting at any time from the injury, will be deemed to have been made at the time the first of those "claims" is made against any insured.

Thus, the Policies provide Professional Liability coverage on a "claims-made" basis. That is, whether each policy provides coverage depends upon when a claim is first made against the insured—not when the claimant's alleged loss or injury occurred.

Here, K&S sent its first demand letter to Envitech on March 8, 2017. The claim was first made against Envitech during the 2016 Policy period. At that time, the 2013, 2014, and 2015 Policies had already expired and the 2017 Policy had not yet incepted. The 2013, 2014, 2015, and 2017 Policies, therefore, do not provide Professional Liability coverage.

The 2016 Policy also does not provide Professional Liability coverage for K&S's claims against Envitech. The 2016 Policy does not provide Professional Liability coverage for a "professional services incident" that occurs before the Policy's "Retroactive Date":

    b.  This insurance applies to a "claim" that results from a "professional services incident" only if:

              * * *

      (2)  The "professional services incident" did not occur before the Retroactive Date identified in the Declarations, or after the end of the policy period[.]

The Retroactive Date for all five Everest Policies is April 8, 2008. The Everest Policies—including the 2016 Policy—therefore do not provide Professional Liability coverage for a professional services incident that occurred before April 8, 2008.

    K&S alleges that Envitech negligently performed the Assessment (and failed to correct material misrepresentations in i). Envitech completed the Assessment no later than August 29, 2007—approximately eight months before the Retroactive Date. Because K&S's claims are the result of a professional services incident that took place before the Retroactive Date, the Everest Policies do not provide coverage by their terms, as a matter of law.

    Furthermore, the Everest Policies expressly *exclude* coverage for K&S's claims against Envitech. The Professional Liability coverage part contains a "Prior Professional Services" exclusion. This exclusion bars coverage for any claim based upon a consequence of, or arising out of, any professional services performed by an insured prior to the Retroactive Date:

    2.  **Exclusions**

      This insurance does not apply to any "claim":

          * * *

      s.  **Prior Professional Services**

        Based upon, as a consequence of or arising out of any "professional services" performed by or on behalf of an insured prior to the Retroactive Date identified in the Declarations.

Because K&S's claims against Envitech are based upon an Assessment done eight months before the Retroactive Date, the Everest Policies exclude coverage, again by its terms and as a matter law.

**2. The Everest Policies do not provide CGL coverage for K&S's claims against Envitech.**

Each of the Everest Policies also contains a CGL coverage part. Under the applicable CGL insuring agreement, the Policies provide liability coverage for "property damage" caused by an "occurrence:"

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . . .
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> (2) The "bodily injury" or "property damage" occurs during the policy period. . . .

If the alleged occurrence does not cause the property damage at issue, then the Policies do not provide liability coverage. Mere economic losses (e.g., diminished value of land, decreased resale price, etc.) do not constitute property damage. *See, e.g., Goodstein v. Cont'l Cas. Co.*, 509 F.3d 1042, 1054 (9th Cir. 2007) (applying Washington law); *Big Constr., Inc. v. Gemini Ins. Co.*, 2012 WL 1858723, at *8 (W.D. Wash. May 22, 2012); *Chicago Ins. Co. v. Ctr. for Counseling & Health Res.*, 2011 WL 1221019, at *4 (W.D. Wash. 2011).

K&S's claims against Envitech do not fall within this CGL coverage. K&S does not allege that Envitech caused the contamination conditions at the Property. Rather, it claims only that Envitech failed to identify and disclose environmental contamination in the Assessment, and failed to subsequently correct its professional errors. In other words, K&S alleges that it suffered monetary losses by purchasing the contaminated Property and by being unable to sell it without incurring remediation costs. These alleged economic losses do not constitute "property damage" under the Policies, as a matter of law.

Furthermore, the Everest Policies, expresslly exclude CGL coverage for K&S's claims against Envitech. For example, each of the Policies contains an absolute pollution exclusion; they do not cover losses resulting from pollution, even if they are otherwise the result of an "occurence".

The CGL coverage part also expressly excludes coverage for Envitech's professional negligence:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the *rendering of or failure to render professional services* by you. . . including the preparation or approval of maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings, specifications or engineering services. (emphasis added).

That is, an insured's liability for property damage arising out of the rendering or failure to render professional services is not covered.

Finally, and in any event, an endorsement to the CGL coverage part also expressly excludes liability coverage for "testing and consulting errors and omissions":

> This insurance policy does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:
>
> 1. An error, omissions, defect or deficiency in:

        a.      Any test performed; or

        b.      An evaluation, a consultation or advice given, by or on behalf of any insured;

  2.      The reporting of or reliance upon any such test, evaluation, consultation or advice; or

  3.      An error, omission, defect or deficiency in experimental data or the insured's interpretation of that data.

Because K&S alleges that Envitech provided a deficient evaluation in the Assessment, this exclusion also applies and bars coverage for K&S's claims against Envitech, as a matter of law.

**3. The Everest Policies do not provide CPL coverage for the claims asserted against Envitech.**

The Everest Policies also contain a CPL coverage part, which provides two types of CPL coverage: (1) occurrence-based coverage; and (2) claims-made coverage. Neither provides coverage for the underlying claims.

Under both CPL insuring agreements, the alleged property damage must result from a pollution condition that arises *out of* the insured's work:

        b.      This insurance applies to "bodily injury" and "property damage" only if:

                * * *

        (3)    The "bodily injury" or "property damage" results from a "pollution condition" that arises out of "your work".

Here again, K&S's claims against Envitech do not satisfy the occurrence-based nor the claims-made insuring agreements. K&S does not allege that the contaminated conditions at the Property *arose out of* Envitech's work; it alleges only that Envitech negligently failed to identify

conditions that existed long before Envitech performed its Assessment. The Policies, therefore, do not provide CPL coverage for K&S's claims as a matter of law.

Furthermore, the CPL coverage expressly excludes coverage for prior pollution conditions, which commenced before the policy period.

Finally, the CPL coverage part also excludes coverage for an insured's professional liability:

> 2. **Exclusions**
>
> This insurance does not apply to:
>
> * * *
>
> g. **Professional services**
>
> "Bodily injury" or "property damage" arising out of the *rending of or failure to render professional services* by you or any contractor or subcontractor working on your behalf, including the preparation or approval of maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings, specifications or engineering services.

Because K&S alleges that Envitech breached its professional duties by failing to identify the contamination conditions or correct its errors, the Policies do not provide CPL coverage as a matter of law.

**3. Envitech's evidentiary objections lack merit.**

Envitech argues that Everest failed to meet its evidentiary burden as the moving party under Fed. R. Civ. P. Rule 56. Envitech argues the Court should not consider the relevant documents—e,g., the Policies, the Underlying Complaint, and the Assessment—which are attached as exhibits to the declaration submitted by Everest's counsel. Envitech contends that

Everest's counsel lacks personal knowledge sufficient to authenticate the documents under Rule 901 of the Federal Rules of Evidence.

But "Rule 56(c) only requires that a fact be presented in a form that 'would be admissible' in evidence not necessarily in a form that is admissible now." *Sullivan v. City of Marysville*, 2014 WL 467896, at *4 (W.D. Wash. Feb. 5, 2014) (quoting Fed R. Civ. P. 56(c)). And this exception to the authentication requirement "is particularly warranted in cases . . . where the objecting party does not contest the authenticity of the evidence submitted but nevertheless makes an evidentiary objection based on purely procedural grounds. Here, in its opposition brief, Envitech concedes that documents are authentic and objects on purely procedural grounds. Because Envitech admits to the authenticity of the document submitted by Everest's counsel, its procedural argument fails.

Envitech also argues that the Assessment and the Underlying Complaint are "pure hearsay" and, thus, inadmissible under Rule 802. But Everest did not submit the Underlying Complaint to prove that the underlying allegations are true. Rather, Everest submitted the Underlying Complaint to show that K&S's claims against Envitech is not covered under the Policies. Everest's coverage arguments depend solely on Envitech's potential liability to K&S—not its actual liability (if any). Whether or not the allegations in the Underlying Complaint are true, the Policies still bar coverage. The Underlying Complaint is not offered for the truth of the matter asserted and, therefore, it is not hearsay.

Nor is the Assessment hearsay. It is a report authored by Envitech's president (which Envitech concedes is authentic). And, thus, it is an admission of a party opponent, which is exempted from the definition of hearsay under Rule 801(d)(2). The Assessment it authored is not inadmissible hearsay.

ORDER GRANTING MOTION FOR PARTIAL
SUMMARY JUDGMENT - 10

**4. Envitech's IFCA claim is legally defective.**

Everest does not seek summary judgment on Envitech's extra-contractual bad faith and CPA claims. But it does seek summary judgment on Envitech's legally-deficient IFCA claim. Envitech is not a "first party claimant" under IFCA and, therefore, it cannot maintain an IFCA claim. Furthermore, because the Policies do not provide coverage for the underlying claims, Everest did not unreasonably deny coverage. Absent an unreasonable denial, Envitech cannot maintain an IFCA claim based on procedural claim-handling violations.

## II. CONCLUSION

Based on the facts and the terms and conditions of the Policies, the Court **GRANTS** the Defendant Everest Indemnity Insurance Company's Motion for Partial Summary Judgment [Dkt. #19] and declares that the Policies do not provide defense or indemnity coverage for K&S's claims against Envitech, and that Everest has no continuing obligation to defend Envitech in the underlying lawsuit. Envitech's IFCA claim is **DISMISSED** as a matter of law.

IT IS SO ORDERED.

Dated this 10th day of August, 2018.

Ronald B. Leighton
United States District Judge